## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DANNA WETHJE
23231 Arora Hills Drive
Clarksburg, MD 20871

      Plaintiff,

      v.

Civ. No.

CACI INTERNATIONAL INC.
1100 North Glebe Road
Arlington, VA 22201

      Serve: Corporation Service Company
             100 Shockoe Slip, 2nd Floor
             Richmond, VA 23219

      Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Danna Wethje, by her attorney, alleges for her Complaint herein:

### PRELIMINARY STATEMENT

1.      Ms. Wethje brings this reverse discrimination and retaliation case against her former employer CACI International Inc. ("CACI").  Despite a flawless track record during her thirteen-year tenure with CACI, CACI terminated Ms. Wethje because of her race (white).

2.      Four months prior to terminating Ms. Wethje, CACI promoted Ms. Wethje to manage the Proposal Coordinator Department.  In doing so, CACI replaced an African American staff member who had been managing the Proposal Coordinator Department, and assigned those responsibilities to Ms. Wethje.  Shortly thereafter, African American staff members (including the employee that had been replaced), began making complaints of discrimination relating to CACI's transfer of the responsibilities of the Proposal Coordinator to Ms. Wethje.

3.      In response to the threat of litigation by the African American employees, CACI started targeting its white employees. To appease the other employees complaining of racism, on July 31, 2017, CACI terminated Ms. Wethje because she was white.

4.      CACI's decision to fire Ms. Wethje was an illegal race-based decision.

5.      Accordingly, this is an action for unlawful discrimination, retaliation, and hostile work environment on the basis of Ms. Wethje's race in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq*., ("Section 1981") and 42 U.S.C. § 2000e, *et seq.* ("Title VII").

## JURISDICTION AND VENUE

6.       This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343(a)(4).

7.      Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b)(2) as the acts and/or omissions alleged in this Complaint occurred in Montgomery County, Maryland. Moreover, the Defendant is found in and transacts business in Montgomery County, Maryland.

8.      Plaintiff received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission on June 25, 2018, which allows Plaintiff to pursue her claims in this United States District Court.

## PARTIES AND RELEVANT PERSONS

9.      Plaintiff Danna Wethje is an individual who is a resident of Maryland. Ms. Wethje is a white female who was hired by CACI as a Production Manager, and employed there from July 2004 until in or about August 2017. At all times relevant, Ms. Wethje was employed by CACI in Montgomery County, Maryland. Ms. Wethje was an employee of CACI as defined

under 42 U.S.C. §2000(e).

10.     Defendant CACI International Inc. ("CACI") is a for-profit organization formed an organized under the laws of the Delaware with its principal place of business located in Arlington, Virginia.   At all times relevant, Defendant CACI conducted substantial business activities in the State of Maryland, and employed Ms. Wethje in Montgomery County Maryland. Defendant CACI is an employer defined by 42 U.S.C. §2000(e). Upon information and belief, at all relevant times herein, CACI employed more than five-hundred (500). At all times relevant, Defendant CACI acted by and through its agents, servants, and/or employees within the course and scope of their employment with CACI and in furtherance of CACI's business.

**FACTS COMMON TO ALL COUNTS**

11.     Ms. Wethje began working for CACI in July 2004 as a Production Manager to support the Task Order Proposal Department.  When she started, this department consisted of three staff members.   She was soon promoted to a management role in 2005.

12.     In 2008, Ms. Wethje was again promoted in recognition of her role in managing and expanding the production operation.

13.     In 2011, Ms. Wethje was promoted for the third time to the position of Technical Publications Manager.  By that time, the department grew to over 20 staff members.

14.     In 2013, the decision was made to lend Ms. Wethje's expertise to the languishing Corporate Proposal Production Group.   Accordingly, the prospering Task Order Proposal Production Group was merged with the struggling Corporate Proposal Group. Ms. Wethje's responsibilities grew as she now managed the operations of the two groups.

15.     By January 2017, Ms. Wethje was overseeing 25 staff members, and she was responsible for Editors, Production Managers, and Production Assistants.

16.     Given Ms. Wethje accomplishments with CACI, Ms. Wethje was informed by Senior Vice President of Proposal Operations ("LS") that CACI would be promoting Ms. Wethje to a Director position.  Ms. Wethje was informed that she would be provided a higher title and increased compensation that better reflected her responsibilities with the organization.

**CACI Assigned Ms. Wethje to Manage the Proposal Coordinator Department; CACI Demoted the Existing African American Manager**

17.     On March 24, 2017, LS assigned Ms. Wethje to manage the Proposal Coordinator Department, in addition to the three other departments she was already managing.  In doing so, CACI replaced an African American staff member who had been managing the Proposal Coordinator Department, and assigned those responsibilities to Ms. Wethje.

18.     The displaced manager remained an employee, but CACI stripped her of her responsibilities.

19.     Shortly thereafter, an African American staff member in the Proposal Coordinator Department, who had been subordinate to the displaced manager, began making complaints of discrimination relating to CACI's transfer of the responsibilities of the Proposal Coordinator to Ms. Wethje.

20.     The subordinate employee was suspect of CACI's decision to assign the Proposal Coordinator's responsibilities to Ms. Wethje, and continued to complain of discrimination, believing that the African American employees were being treated unfairly at CACI.  These complaints of discrimination eventually expanded to include Ms. Wethje—the newly promoted white employee in the management position.

21.     In May 2017, rumors were circulating at CACI that some of the African American employees were pursuing a discrimination lawsuit.  The displaced manager complained to Mike Gaffney, the Executive Vice President, Chief Business Development Officer, that she had been

unfairly removed as manager of the Proposal Coordinators.  In response to the threats of litigation, CACI began to cover its tracks.

***CACI Discriminated Against Ms. Wethje Because she is White***

22.     In an effort to start "papering" its defense in response to the threat of litigation by the African American employees, CACI started targeting its white employees.

23.     First, CACI wrote-up LS in relation to the decision to assign Ms. Wethje to the manage the Proposal Coordinator Department.

24.     In light of the fact that the source of the discrimination complaints was CACI's decision to demote the African American manager of the Proposal Coordinator Department and to replace her with Ms. Wethje, Ms. Wethje spoke directly with Ron Schneider, the Executive Vice President of Business Development.  During that call, Mr. Schneider assured Ms. Wethje that he has "heard nothing but good things about [Ms. Wethje]," and that "we would put all of this behind us."

25.     Next, CACI began an investigation into the discrimination complaints.  As part of that investigation, Ms. Wethje met with HR on June 28, 2017. During that meeting, HR explained that the manner in which CACI demoted the displaced manager "opened up a can of worms for CACI."  Nevertheless, HR reassured Ms. Wethje that she had nothing to be concerned about.  HR stated that it "wouldn't be logical to put the Coordinators back under [the displaced manager] despite the fact that the way in which was done could have been better, because it was clear that made more sense for [Ms. Wethje] to manage them based on [her] experience."  HR concluded the meeting by stating that the next step was to meet with Ron Schneider to discuss the results of the investigation and provide suggestions for the path forward.  That meeting never happened because

CACI's investigation was a sham, designed to provide cover for the firings it planned to make to defend against claims of discrimination.

26.     At the end of CACI's sham investigation, it reached a decision that in order to stem the complaints of racial discrimination, it needed to fire a white employee.

27.     Since Danna Wethje replaced the disgruntled employee claiming harassment, her firing would provide the perfect salve to assist CACI in defending the complaints of racial discrimination.

28.     Ironically, however, CACI's decision to fire Ms. Wethje was an illegal race-based decision.   To appease the other employees crying racism, on July 31, 2017, CACI terminated Ms. Wethje because she was white.[1]

29.     Further evidence of this race-based decision making by CACI is the fact that the disgruntled African-American employee who had been complaining of racial discrimination because of Ms. Wethje's promotion was restored with her responsibilities after Ms. Wethje's termination.

***CACI Further Retaliated Against Ms. Wethje***

30.     CACI's discriminatory termination of Ms. Wethje was transparent to the CACI staff.   In protest over the termination of Ms. Wethje, staff members tendered their resignations.

31.     On August 3, 2017, KH wrote:

> It is with regret that I am informing you that I have resigned my position at CACI. My resignation today is a direct result of the events surrounding the termination of Danna. I had hoped that if I ever left CACI, it would be under better circumstances, but I can't just stand by and pretend like this is not terribly wrong.

---

[1] CACI's purported rationale for Ms. Wethje's termination was that her "current position has been eliminated due to reductions in CACI's FY18 operating budget and you will be laid off effective September 1, 2017."

> In talking to many of you this week, I know that a lot of you feel the same way, and if you were in a position to leave, you would be right behind me.

32.     On August 4, 2017, SW wrote:

> I wanted to let you all know that I also am resigning from CACI effective today. As [KH] said, it really saddens me to see a company treat an employee the way CACI management has treated Danna. To reward her 13+ years of hard work and dedication with this so-called "layoff" is wrong on so many levels. I can't, in good conscience, continue to support a company that so casually sacrifices outstanding employees to placate others.

33.     In response to CACI's HR crisis, it decided to defame Ms. Wethje and to suppress the dissent.  On August 7, 2017 Ron Schneider wrote an email to numerous individuals that stated:

> We made some organizations changes as part of our FY 18 financial planning process and to correct issues concerning management and oversight of part time employees that were uncovered during recent internal reviews. It is unfortunate that a few members of our team who were upset with the changes chose to broadcast their questions with CACI's ethics and integrity in a public manner…Those employees spoke with no understanding of the facts and their communication was not professional and a violation of CACI's Electronic Communications User Agreement.

34.     Contrary to Mr. Schneider's broadcast statement to CACI staff, the only proffered reason for Ms. Wethje's termination was the purported decision to eliminate her position due to funding.  CACI could not even keep its pretext straight.

35.     At no point in time, did CACI explain to Ms. Wethje that she was terminated due to "oversight of part time employees that were uncovered during recent internal reviews."  What Mr. Schneider was effectively saying is that CACI fired Ms. Wethje because Ms. Wethje supervised family members who were employed by CACI in violation of CACI policy. Importantly, this statement is contradicted by the termination letter provided to Ms. Wethje.  Moreover, the reality

is that the evolving pretext is false. Since as early as 2006, CACI expressly authorized Ms. Wethje's supervision of family members employed by CACI.  This is well-documented.

36.     The truth is that CACI fired Ms. Wethje because CACI's promotion of her to manage the Proposal Coordinator Department (and the corresponding demotion of the African American displaced manager) exposed CACI to the threat of litigation.  In an effort to concoct a defense to the potential lawsuit and to appease those complaining of discrimination, CACI reversed course and terminated Ms. Wethje because she is white.

**COUNT I**
**RACIAL DISCRIMINATION AND DISPARATE TREATMENT IN VIOLATION OF TITLE VII**

37.      Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

38.     Defendant discriminated against Plaintiff on the basis of her race and/or color (white) in violation of Title VII by, *inter alia*, subjecting her to a hostile work environment; denying her the same terms and conditions of employment available to individuals who are not white; subjecting her to disparate working conditions; subjecting her to discriminatory discipline and termination; subjecting her to discriminatory job assignments; and by denying her the opportunity to work in an employment setting free of unlawful harassment and discrimination. Plaintiff's race and complaints of race-based discriminatory treatment was a motivating and/or determinative factor in connection with Defendant's treatment of Plaintiff.

39.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and

retaliatory acts unless, and until, the Court grants the relief requested herein.

40.     Defendants' violations of Title VII were willful and warrant the imposition of punitive damages.

41.     Plaintiff seeks affirmative relief which may include, but is not limited to: requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation; requiring Defendant's employees and defendants to undergo discrimination and retaliation training; and any other equitable relief as the Court deems appropriate, compensatory damages, attorneys fees, costs and disbursements of this action.

42.     WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendant by awarding (1) compensatory damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages, and (5) any other relief the Court deems proper.

## COUNT II
## RACIAL DISCRIMINATION AND DISPARATE TREATMENT IN VIOLATION OF 42 U.S.C. § 1981

43.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

44.     Defendant discriminated against Plaintiff on the basis of her race and/or color (white) in violation of 42 U.S.C. § 1981 by, *inter alia*, subjecting her to a hostile work environment; denying her the same terms and conditions of employment available to individuals who are not white; subjecting her to disparate working conditions; subjecting her to discriminatory discipline and termination; subjecting her to discriminatory job assignments; by denying her the opportunity to work in an employment setting free of unlawful harassment; by intentionally refusing to give Ms. Wethje the same right to make and her enforce her contract

with CACI as her black coworkers.. Plaintiff's race and complaints of race-based discriminatory treatment was a motivating and/or determinative factor in connection with Defendant's treatment of Plaintiff.

45.    At all times relevant, CACI acted with the intent to discriminate against Ms. Wethje based on her race.

46.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless, and until, the Court grants the relief requested herein.

47.    Defendants' violations of 42 U.S.C. § 1981 were willful and warrant the imposition of punitive damages.

48.    Plaintiff seeks affirmative relief which may include, but is not limited to: requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation; requiring Defendant's employees and defendants to undergo discrimination and retaliation training; and any other equitable relief as the Court deems appropriate, compensatory damages, attorneys fees, costs and disbursements of this action.

49.    WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendant by awarding (1) compensatory damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages, and (5) any other relief the Court deems proper.

**PRAYER FOR RELIEF**

50.    WHEREFORE, Plaintiff prays for relief in the form of a judgment against

Defendant awarding punitive damages and any other relief the Court deems proper and just.

Plaintiff prays for judgment against Defendants against Defendants, jointly and severally, by

awarding (1) compensatory damages; (2) equitable relief, including back pay, and reinstatement

or front pay; (3) costs and attorney's fees; (4) punitive damages, and (5) any other relief the

Court deems proper

## JURY AND TRIAL DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,

/s/ Brendan J. Klaproth
_____
Brendan J. Klaproth  (Bar No. 20080)
Klaproth Law PLLC
406 5th Street NW, Suite 350
Washington, DC 20001
Telephone: 202-618-2344
Email: Bklaproth@klaprothlaw.com
*Attorney for Plaintiff*