**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DANNA WETHJE, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. 8:18-cv-02424-PX |
| CACI-ISS, Inc., | * |
| Defendant. | * |

******

**MEMORANDUM OPINION**

Pending in this employment discrimination case is CACI-ISS, Inc. ("CACI")'s Motion for Summary Judgment. ECF No. 27. Plaintiff Danna Wethje ("Wethje") contends that CACI abruptly ended her long career with CACI because she is white, and not because CACI needed to tighten its budgetary belt or because she had performed her job poorly. ECF No. 33-4. The motions are fully briefed and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, CACI's Motion for Summary Judgment is denied.[1]

**I. Background**

The following facts are construed in the light most favorable to Wethje as the party challenging the propriety of summary judgment.[2]

---

[1] Wethje has requested that the Court seal an unredacted copy of her response and certain exhibits that include personnel and employment information previously designated confidential pursuant to the stipulated confidentiality order. *See* ECF No. 35. The Court grants Wethje's motion to seal.

[2] CACI asserts that because Wethje failed to respond to CACI's statement of undisputed facts, the Court should treat such facts as undisputed. ECF No. 38 at 6–7 (citing Fed. R. Civ. P. 56(e)(2)). As Wethje correctly notes, this Court's Local Rules do not require that a plaintiff respond to the movant's claimed "undisputed" facts in any particular format, and for good reason. *See* ECF No. 33-1 at 6 n. 1. This Court often finds that one party's views of the "undisputed" facts are rarely accurate or complete, and thus are largely unhelpful. CACI's request is denied.

### A. Wethje's Employment at CACI

In 2004, Wethje began working as a production manager for Information Systems Support ("ISS"), a company later acquired by CACI.  ECF No. 33-38 at 4–5.  During her time with CACI, Wethje, a white woman, worked in the production department for CACI's Business Development group until she was fired on July 31, 2017.  *See* ECF Nos. 33-38 at 5–10; 33-4.

For the entirety of her time with CACI, Wethje's supervisors considered her an exceptional employee.  In annual performance evaluations, Wethje almost always exceeded her employer's expectations.  *See* ECF Nos. 34-19; 33-40 at 17–18.  According to Laura Shear, Senior Vice President of Proposal Operations and one of Wethje's direct supervisors, Wethje frequently went above and beyond her assigned duties to ensure the department met its goals.  ECF No. 33-41 at 4–7.  Wethje's supervisor and Director of the Proposal Support department, Chris Froberg, noted Wethje had "done an outstanding job of managing her staff[,]" that she "treats her employees in a fair manner[,]" and "has long been an upholder of CACI ethics and values."  ECF Nos. 34-19 at 2; 33-29.  A coworker similarly described Wethje as "absolutely essential to the functioning of the department."  ECF No. 33-3 ¶ 4.

Wethje also received multiple promotions during her tenure at CACI.  A year into her employment, Wethje was placed in her first of many supervisory positions.  ECF No. 33-38 at 5.  In 2008, Wethje became a Technical Publications Manager, a position in which she gained more "direct reports" in the business proposal group to manage.  *Id.* at 5–7.  When Wethje's department merged with another CACI production group, Wethje was assigned to supervise 28 employees—more than any other manager at CACI.  *Id.* at 8–10; ECF No. 33-41 at 31–32.

**B. CACI's Review of Wethje's Purported Favoritism and Insensitivity**

In March 2017, Shear demoted another manager, Zenobia King-Brown, an African American woman who managed CACI's proposal coordinators. ECF No. 33-41 at 10–11. Wethje was reassigned the employees who had worked under King-Brown. *Id.* at 10, 14. Immediately after, CACI saw a sharp uptick in complaints aimed at the Production Department.

In April 2017, Stephanie Fisher, who is African American, complained to Jenna Plews in Human Resources that once Wethje took over for King-Brown, Wethje assigned work to part-time employees instead of salaried employees, and she had not assigned Fisher sufficient billable work. ECF Nos. 27-5 at 3; 27-8 at 23. At CACI, a manager could staff projects with three kinds of employees: full-time, part-time, or part-time-on-call ("on-call") employees. ECF No. 27-5 at 2. Company policy required that full-time employees such as Fisher work a standard 40 hour per week schedule, receive a salary and benefits, and are not paid overtime. ECF Nos. 27-5 at 2–3; 27-7 at 4. On-call employees, in contrast, worked as needed and were paid hourly up to 40 hours per week and then an overtime rate for any hours worked in excess of 40. ECF Nos. 27-7 at 4; 27-6 at 19–21. Although CACI's guidance suggested that on-call employees should generally work fewer than 20 hours a week, no formal policy existed that circumscribed how work would be allotted as between full-time and on-call employees. *See* ECF Nos. 27-7 at 4; 27-6 at 7.

Fisher also complained that Wethje permitted family members to work for her, in contravention of CACI's nepotism policy. CACI specifically allowed family members to work together but prohibited one family member from supervising another. ECF No. 27-8 at 14–15.

These complaints triggered an audit of Wethje's use of on-call employees and her supervision of family members. ECF No. 27-5 at 3–4. The investigation revealed that Wethje supervised both her mother and sister-in-law. ECF Nos. 34-7 at 2–3; 27-10 at 2. When Wethje

3

was asked about why she allowed this arrangement, Wethje responded that her supervisor, Froberg, as well as Human Resources already knew and had essentially endorsed it. *See* ECF Nos. 27-8 at 9–10; 27-11 at 7–11. The investigation further documented that Wethje did not assign her mother inordinate hours or give her particularly favorable reviews. ECF No. 34-7 at 2. Wethje's sister-in-law reported directly to Froberg for the most part, although sometimes received work from Wethje. *Id.* at 2-3; ECF No. 28-2.

As to Wethje's use of on-call employees, the investigation determined the allegations were mostly unsubstantiated. However, Wethje did assign one employee, Tara Martin, over 2,000 hours in a period of about ten months. ECF No. 27-10. In fact, so high was Martin's resulting pay that CACI could not offer her a full-time position without asking her to take a significant pay cut. *See* ECF No. 27-4 at 17. Wethje responded that this lopsided assignment sometimes arose because she routinely rotated full-time employees with on-call employees so as to prevent employee burnout. ECF No. 27-10 at 2. In support of this supervision strategy, Wethje pointed out that her department enjoyed a near perfect retention rate, as compared to the "extremely high" turnover in the industry. *See* ECF No. 27-11 at 5.

According to Human Resources, Wethje's overuse of Martin was further complicated because the two women had been college roommates and close friends, and possibly attended church together. *See* ECF No. 27-8 at 16. But Martin attested, and Wethje confirmed, that the two women never had any such relationship. ECF Nos. 33-3 ¶ 7; 33-38 at 11–12. Martin also received the same or fewer work hours under Wethje's supervision than she did from other managers.[3] ECF No. 33-3 ¶ 5. *See also* ECF No. 33-36 at 3.

---

[3] CACI urges the Court to strike Martin's declaration as hearsay and opinion testimony. ECF No. 38 at 17–18. This argument is meritless. To be sure, a declaration alone may be hearsay, but for purposes of summary judgment, the declaration provides firsthand observations to which that witness may be expected to testify at trial. Indeed, Rule 56 expressly contemplates that record evidence shall include "affidavits or declarations." Fed. R. Civ.

Additionally, Fisher separately complained in June 2017 about Wethje having made a certain racially discriminatory remark to her.  Fisher and Wethje had been butting heads about Fisher's lack of responsiveness to Wethje's work-related inquiries.  *See* ECF No. 28-7.  Wethje, as Fisher's supervisor, admonished Fisher about her need to improve her communication skills, reminding Fisher that she "serve[d] several masters" and must find the time to meet with Wethje.  *See* ECF Nos. 28-7; 33-38 at 13–16.  Fisher viewed this "masters" comment as racially derogatory, and so she reported the incident to Executive Vice President of the Business Development Department, Ronald Schneider, and filed a formal complaint with Human Resources.  ECF Nos. 34-3; -8; -10.

Within a week of Fisher's complaint, CACI received a flood of other similar racially charged complaints aimed *not* at Wethje, but at Shear.  King-Brown, for example, requested an immediate transfer because Shear had harassed and demeaned her and other African American employees in a "discriminatory fashion."  *See* ECF No. 33-16.  An anonymous hotline complaint echoed these concerns.  ECF No. 34-5.  Two additional CACI hotline complaints reported that under Shear's management, African American employees had been "persistently and continually discriminated against."  ECF Nos. 28-5 at 2; 28-6.  In those, Shear had been accused of demoting four African American employees in the group, including King-Brown, in short order and replacing them with white employees, such as Wethje.  *Id.*

### C. Wethje's Termination

Immediately responding to these complaints, Schneider promised Fisher and King-Brown that he took the allegations of race discrimination "very seriously" and would investigate them.

---

P. 56(c)(1)(a).  So here, Martin attests via declaration that she had no personal relationship with Wethje and that she received as much or more work after Wethje left.  At trial, Wethje would be expected to call Martin to supply this evidence, just as CACI would be expected to call witnesses or present documents in rebuttal.  CACI's request is denied.

ECF Nos. 34-8; 33-16 at 2.  Schneider's own disposition reflected that emotions were running high about the complaints; he confessed that "in 38 years [he had] never been this stressed over personnel issues."  ECF Nos. 34-11 at 2; 33-39 at 7–8.  Accordingly, Schneider pressed CACI to conduct a full investigation and urged that CACI send "a strong message that we will not tolerate discrimination or favoritism in any form."  *See* ECF Nos. 33-39 at 5, 11–12; 33-18.

But even though Schneider promised to conduct an investigation, he wanted to fire Wethje immediately—if CACI could "defend that decision"—to appear as if he were taking a "strong" position against race discrimination.  ECF No. 33-18.  Schneider thus took immediate steps to terminate Wethje and reinstate King-Brown, notifying CACI upper management of his plans and directing that Human Resources "find a way to make it happen" as soon as possible.  ECF No. 34-12.

CACI, however, did not fire Wethje as Schneider had urged.  Instead, Human Resources determined that firing Wethje for her singular comment to Fisher was simply not appropriate.  Wethje admitted to Human Resources that her "masters" comment had been insensitive and she promised to be more careful going forward.  ECF No. 34-14 at 3.  Wethje also explained that the racial implications had "not even crossed her mind," but rather she had been thinking of a bible verse about being in the service of two masters.  Contrite, Wethje ultimately confessed to her embarrassment over her insensitivity.  ECF No. 33-38 at 15–16.  Human Resources advocated that Wethje receive counseling in lieu of termination for this "isolated incident."  ECF No. 34-14 at 3.

Evidently not satisfied, Schneider persisted with his initial decision that Wethje must go.  "Coincident[ally]," around the same time, Schneider received notification that he had to "cut budget."  ECF No. 33-39 at 27.  Schneider decided that rather than attempt to fire Wethje for

cause, he would eliminate her position as part of a larger reduction-in-workforce. *Id.* at 27–28; ECF No. 27-5 at 5. Schneider also admitted that he could use the budget cuts to "eliminate" Wethje's position to achieve his goal of terminating Wethje with more liberal notice and no damage to her work history. ECF No. 27-6 at 9–10, 16–17. In short, Schneider decided to eliminate Wethje by eliminating her position. ECF Nos. 27-5 at 6; 27-6 at 13, 15.[4]

On July 31, 2017, CACI notified Wethje of her impending termination by letter. ECF Nos. 33-4; 27-11 at 9–10. The letter stated that even though CACI considered Wethje a "trusted and valuable employee," she would be let go because the company cut her position. ECF No. 33-4 at 2.[5] After thirteen years with CACI, Wethje's time with the company came to an abrupt end.

Wethje filed this race discrimination action on August 8, 2018, alleging that CACI violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ECF No. 1 ¶¶ 38, 44. Wethje's liability theory as to both claims is that CACI fired her on account of her race so as to appear especially responsive to the claims of discrimination lodged by African American employees, even though Wethje's involvement was tangential, isolated, and addressed by Human Resources. The parties have completed discovery. For the following reasons, genuine issues of material fact preclude awarding CACI summary judgment. The motion, therefore, must be denied.

---

[4] In addition to cutting Wethje as part of a reduction-in-workforce effort, Schneider also gave other, equally curious reasons for wanting Wethje fired, to include Wethje's over-assignment of work to on-call employees. *See* ECF No. 27-6 at 10–11. Schneider maintained this position even though Wethje's use of on-call employees did not contravene company policy. Further, at the time Schneider voiced his opinion that Wethje needed to be fired for this transgression, Human Resources had not fully concluded its investigation of the same. *See* ECF Nos. 27-10 at 2; 33-36.

[5] CACI maintains that it also eliminated two senior executive positions in the Business Development Department and laid off 28 employees in total. ECF No. 27-5 at 5. However, Shear testified that Wethje had been the only employee from her department who was terminated, and at Schneider's insistence. ECF No. 33-41 at 42–45.

**II.     Standard of Review**

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322. Employing this standard, the Court addresses the propriety of summary judgment as to Wethje's claims.

### III. Analysis

#### A. Sufficiency of Wethje's Race Discrimination Claims

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race."  42 U.S.C. § 2000e–2(a)(1).  Similarly, 42 U.S.C. § 1981 prohibits "discrimination in employment on the basis of race."  *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551–52 (4th Cir. 2006).  Title VII and § 1981 apply to "reverse discrimination" cases in which, as here, a member of the white majority alleges that she suffered adverse employment action on account of her race.  *See Lucas v. Dole*, 835 F.2d 532, 534 (4th Cir. 1987) (citing *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273 (1975)).

Wethje may survive summary judgment by establishing direct and indirect evidence of discriminatory animus, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).  The Fourth Circuit has referred to these two "avenues of proof" as the "mixed-motive" and "pretext" frameworks, respectively.  *Diamond*, at 317–18.  *But see id.* at 318 n. 4 ("In the event that a plaintiff has direct evidence of discrimination or simply prefers to proceed without the benefit of the burden-shifting framework, she is under no obligation to make out a prima facie case.").  Under either avenue of proof, the focus is on whether a reasonable juror could conclude that illegal discrimination was a motivating factor in the employment decision.  *Sawicki v. Morgan State Univ.*, No. WMN-03-1600, 2005 WL 5351448, at *6 (D. Md. Aug. 2, 2005).

The Court has traditionally applied the *McDonnell Douglas* framework to § 1981 claims where direct evidence of discrimination is lacking. *See Guessous v. Fairview Prop. Investments, LLC,* 828 F.3d 208, 216 (4th Cir. 2016); *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001). The Supreme Court has recently clarified that to prove discrimination under § 1981 a plaintiff must prove that "but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). In line with the reasoning of *Comcast*, the Fourth Circuit has continued to apply the *McDonnell Douglas* framework "as 'a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination.'" *Gary v. Facebook, Inc.*, 822 F. App'x 175, 180 (4th Cir. 2020) (quoting *Comcast*, 140 S. Ct. at 1019). That said, to prevail on a § 1981 claim, a plaintiff must prove that race was the "but for" cause behind the adverse employment action. *Comcast*, 140 S. Ct. at 1014 ("a plaintiff bears the burden of showing that race was a but-for cause of [her] injury . . . [and] the burden remains constant" over the life of the lawsuit.).

Wethje argues that Schneider's stated intent to "send a strong message" that CACI would not tolerate race discrimination, coupled with the strange timing of his decision to eliminate her position, constitutes direct evidence of discrimination. ECF No. 33-1 at 24–25. Wethje relies heavily on the Seventh Circuit's reasoning in *Rudin v. Lincoln Land Community College*, that "suspicious timing, ambiguous statements, oral or written . . . and other bits and pieces from which an inference of discriminatory intent might be drawn," may be sufficient to provide direct proof of discriminatory animus. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 721 (7th Cir. 2005) (citing *Troupe v. May Dep't Stores*, 20 F.3d 734, 736 (7th Cir. 1994)). The Court need not

reach this question, at least today, because Wethje's race discrimination claims reach the jury under the *McDonnell Douglas* analysis.

Pursuant to *McDonnell Douglas,* Wethje must first establish a prima facie case of discriminatory discharge.  If she establishes the prima face case, then the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for firing her.  The burden then shifts back to her to prove by a preponderance of the evidence that the stated reason is pretextual and that she was instead fired on account of her race.  *Guessous*, 828 F.3d at 216 (internal citations omitted).

As to the prima facie case in the context of a claimed reduction-in-workforce, Wethje must establish: (1) that she is a member of a protected class; (2) that she suffered from an adverse employment action; (3) that she was performing at a level that met her employer's legitimate expectations; and (4) that her duties were absorbed by employees not in the protected class or that the employer did not treat her protected characteristics neutrally when deciding to terminate her.  *See Guessous*, 828 F.3d at 219 (explaining that the typical prima facie case must be altered in reduction-in-workforce cases to account for the particular factual circumstances); *see also Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1417 (4th Cir. 1991).  "The burden at this stage 'is not onerous,' and meeting it 'in effect creates a presumption that the employer unlawfully discriminated against the employee.'"  *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981).

CACI challenges only the third and fourth elements of the prima facie case.  ECF No. 27-1 at 17–20.  CACI first argues that insufficient evidence establishes that Wethje was performing her job at a satisfactory level.  *Id.* at 17–19.  This argument is easily disposed.  Although some evidence supports that Wethje potentially overused one particular on-call employee, robust

evidence exists that Wethje was a highly valued, critical player in CACI's infrastructure until she was terminated.  *See, e.g.*, ECF No. 34-19.  Certain supervisors expressed shock that Wethje had been terminated, ECF No. 33-33 at 2–3, and even Schneider admitted that Wethje performed her job in accordance with his expectations.  ECF No. 33-39 at 39.  A reasonable trier of fact could conclude that Wethje had been meeting CACI's legitimate employment expectations.

CACI next contends that no evidence supports the fourth element of the prima facie case—whether CACI approached the reduction-in-workforce decisions in a "race neutral" manner.  ECF No. 27-1 at 19-20.  On this element, Wethje must demonstrate that her duties were "absorbed by employees *not* in the protected class" or otherwise show that CACI did not treat Wethje's protected characteristics neutrally.  *Guessous*, 828 F.3d at 219.  But the record supports that Wethje was replaced with King-Brown, an African American woman.  Indeed, even though King-Brown technically occupied a different position than Wethje, CACI reassigned Wethje's staff of proposal coordinators to King-Brown.  *See* ECF Nos. 33-39 at 22; 33-41 at 19–20; 33-3 ¶ 2.  Although CACI now maintains that this move was the result of restructuring of assignments, ECF No. 38 at 21, and is thus "race neutral," it will be up to the trier of fact to determine the credibility of that retort.  This is so because Wethje has presented evidence that CACI fired her to *appear* responsive complaints of race discrimination directed at *Shear*, but not because Wethje's own misconduct warranted termination.  Put differently, Wethje—a white manager whose own conduct arguably did not justify her firing—was nonetheless sacrificed so that CACI could appear tough on discrimination generally.  If this liability theory is believed, then a reasonable juror could find that CACI did not treat Wethje's race neutrally because her race was indeed the animating force behind her termination.  *See Guessous*, 828 F.3d at 219

(holding evidence that puts the validity of employer's explanation in doubt defeats summary judgment). Thus, Wethje has generated sufficient evidence to establish her prima facie case.

CACI next challenges whether Wethje can demonstrate that CACI's proffered reasons for eliminating Wethje's position were pretextual. To prove pretext, Wethje must produce sufficient evidence from which a reasonable factfinder could conclude that CACI's articulated nondiscriminatory reasons are untrue or that the "proffered reason, although factually supported, was not the actual reason for its decision . . . ." *Gbenoba v. Montgomery Cnty. Dep't. of Health and Human Servs.*, 209 F. Supp. 2d 572, 577 (D. Md. 2002) (citations omitted). *See also Guessous*, 828 F.3d at 217–18 (citing *King v. Rumsfeld*, 328 F.3d 145, 154 (4th Cir. 2003).

Wethje has met this burden here. For one, a reasonable juror could infer from Schneider's words and deeds that Wethje was eliminated on account of her race. *Cf. Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 867 (D. Md. 2000). CACI had been deluged with complaints primarily about Shear treating African American employees poorly. ECF No. 34-11 at 2. In response, Schneider professed a need to "send a strong message" that would counter any perceived favorable treatment of white supervisors within the Business Development department. ECF No. 33-18. The next day, Schneider notified Human Resources of his desire to fire Wethje and urged that they must "find a way to make it happen" all well in advance of any promised investigation. ECF Nos. 33-16; -17; -18. At the same time, Human Resources never seriously considered firing Wethje for her singular insensitive comment to Fisher. Based on this evidence, a reasonable factfinder could conclude that Schneider essentially scapegoated Wethje to defuse the growing claims of race discrimination at CACI.

Second, Schneider's additional proffered reason for wanting to fire Wethje raises further suspicion as to his real motivation for eliminating Wethje's position and shifting her duties to

13

King-Brown.  Although Schneider claims Wethje's elimination was justified because of her misuse of on-call employees, counter evidence suggests that Schneider could not have known about Wethje's use of Martin at the time he discussed terminating Wethje.  *Compare* ECF No. 33-16 *with* ECF Nos. 27-10 at 3 (Plews July 13 email); 34-7 (investigation closed out October 2017).  And even if he had known about it, at least one other supervisor, Shear, testified that as a matter of company policy, Wethje had not misused the on-call employee assignments with Martin.  ECF No. 33-41 at 5–6.  Shear's testimony is buttressed by the fact that according to Martin, she continued to work as many or *even* more hours once Wethje left.  ECF No. 33-3 ¶ 5.  This further belies Schneider's claim that Wethje violated CACI "policy" when she assigned Martin so much work.  When viewing the record evidence as a whole and most favorably to Wethje, Schneider's varied rationales for terminating Wethje allows for the reasonable inference that the employer unlawfully discriminated against her.  *Cf. Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000).  CACI's summary judgment motion on the Title VII claim is denied.

### B.  The "But For" Cause Under Section 1981

CACI separately contends that as to the § 1981 claim, no evidence supports that Wethje's race was the "but for" cause of her termination.  ECF No. 27-1 at 21–23.  Instead, says CACI, even if Wethje was terminated because she is white, this is not the "but for" reason because her position was eliminated on account of the reduction-in-workforce efforts.  CACI also presses that Wethje was fired because of her misuse of on-call employees.  But Wethje points to ample counter evidence that up to the time of her termination, she was viewed as a stellar employee, and that the claimed overuse of a single on-call employee is indeed a fabrication to paper over the sole reason she was fired—because she is a white manager whose termination could give

14

Schneider the appearance that he was handling the discrimination problem at CACI. The same is true for Schneider's efforts to eliminate Wethje via the reduction-in-workforce immediately after Human Resources thwarted his efforts to fire her. In the end, a reasonable factfinder could reject CACI's stated reasons for termination as nothing more than subterfuge, and instead accept that Wethje's race was the sole reason that she was let go. Accordingly, summary judgment as to Wethje's § 1981 discriminatory discharge claim must be denied.

### IV. Conclusion

Ironically, based on the particular facts of this case, a reasonable juror could find that CACI discriminated against Wethje "to send a strong message" that it would not tolerate discrimination. For the foregoing reasons, CACI's motion for summary judgment is DENIED.

A separate order follows.

| | |
|---|---|
| 02/24/2021 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |